ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

Filed at 10:44 A.M.
DATE 3-14-02
DEPUTY CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| MORRONE COMPANY, a Georgia Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RODNEY BARBOUR, Individually, and BARBOUR INTERNATIONAL, INC., a Mississippi corporation,<br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>5:02-cv-0086-4 (HL) |

### COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES, MONOPOLIZATION AND FRAUD

COMES NOW Plaintiff Morrone Company ("Morrone") and states its Complaint for Declaratory Judgment and Damages, Monopolization and Fraud against Defendant Rodney Barbour and Defendant Barbour International, Inc. ("Barbour") (collectively, the "Defendants"), showing this Court that judgment should be entered in favor of Plaintiff Morrone for the relief sought in this Complaint and for the reasons pleaded as follows:

### PARTIES

1.

Morrone is a Georgia corporation which has been developing and selling outdoor cookers and smokers and related products

since 1981. Morrone's product line includes a deep frying poultry apparatus that Barbour claims is covered by Patent Number 5,758,569 and Patent Number 5,896,810, both of which are owned by Barbour. Morrone's principal place of business is located at 465 Albert Street, Macon, Bibb County, Georgia 31206.

2.

Defendant Barbour is, upon information and belief, a company engaged in the distribution of various kinds of cookware, including outdoor gas cookers, commercial strength stockpots, fryer/streamers and accessories. Barbour's principal place of business is located at 600 Marquette Road, Brandon, Rankin County, Mississippi 39043-1839.

3.

Defendant Barbour may be served with process in this action by delivering a copy of the Summons and Complaint to its registered agent, A M Edwards III, at 210 E Capitol Street, 1300 Deposit Guaranty Plaza, Jackson, Hinds County, Mississippi, 39201.

4.

Defendant Rodney Barbour is, upon information and belief, President of Barbour, and a Mississippi resident who resides at 98 Grandview Circle, Brandon, Rankin County, Mississippi 39047-7398.

5.

Defendant Rodney Barbour may be served with process in this action by delivering a copy of the Summons and Complaint to his place of business located at 600 Marquette Road, Brandon, Rankin County, Mississippi 39043-1839.

**JURISDICTION AND VENUE**

6.

This Complaint seeks a declaratory judgment pursuant to 28 U.S.C. § 2201(a). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338 and 1337 because this action arises under and/or relates to U.S. patent laws and U.S. laws protecting trade and commerce against restraints and monopolies. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

7.

The Court also has personal jurisdiction over the Defendants in this case pursuant to the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91 because the Defendants committed a tortious injury or act or omission in this jurisdiction and because the Defendants have regularly and systematically transacted business in this jurisdiction.

8.

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Defendants are doing business in this district and a substantial part of the events described herein occurred in this district. Venue also is proper in this Court pursuant to O.C.G.A. § 9-10-93 because this is the district where a substantial part of the business was transacted, where the tortious acts or omissions occurred and where the resulting injuries to Morrone occurred.

**FACTS**

9.

Prior to August 1995, Morrone's President, Jack Morrone worked with Daniel Smith ("Smith") and Donald Crowe ("Crowe") of Alonan Manufacturing, Inc. ("Alonan"), a Georgia corporation located in Eatonton, Georgia, to develop a poultry frying apparatus (the "Morrone Turkey Frying Apparatus"). The Morrone Turkey Frying Apparatus is comprised of a central metal rod attached to a footed, perforated metal plate for skewering and supporting a turkey or other poultry as the turkey or other poultry is lowered into and removed from a large container of hot oil. The Morrone Turkey Frying Apparatus also is comprised of a removable metal handle. The metal handle has a hook that engages a loop in the top of the central rod. A picture of the

Morrone Turkey Frying Apparatus in its current form is attached herein as Exhibit "A."

10.

From August 13, 1995 through August 16, 1995, Morrone displayed a prototype of the Morrone Turkey Frying Apparatus in a display booth at the 1995 National Hardware Show (the "Hardware Show") in Chicago, Illinois. The prototype was so well received that Morrone requested Alonan to begin producing the Turkey Frying Apparatus.

11.

In or about February 1996, Morrone received its first factory shipment of Morrone Turkey Frying Apparatuses from Alonan. At that time, Morrone began selling and distributing to retailers Turkey Fryers containing the Turkey Frying Apparatus and has continued to do so ever since.

12.

The Turkey Frying Apparatus Morrone displayed at the Hardware Show was substantially identical to the Turkey Frying Apparatus pictured in Exhibit "A" attached herein.

13.

On information and belief, Defendant Rodney Barbour, or one of Barbour's employees, attended the Hardware Show on behalf of

Barbour. While at the Hardware Show, Rodney Barbour saw the Morrone Turkey Frying Apparatus.

14.

On information and belief, Defendant Rodney Barbour, or one of his employees, was impressed with the Morrone Turkey Frying Apparatus and decided to develop a similar, if not identical, apparatus.

**U.S. PATENT NUMBER 5,758,569**

15.

On March 28, 1996, Rodney Barbour as alleged "Inventor" and Barbour as alleged "Assignee" filed U.S. Patent Application Serial Number 08/625,505 (the "`505 Application") with the United States Patent and Trademark Office (the "Patent Office"). The `505 Application falsely claimed Morrone's Turkey Frying Apparatus as Rodney Barbour's invention. A true, accurate and complete copy of the `505 Application file is attached herein as Exhibit "B."

16.

In the `505 Application, Rodney Barbour declared to the Patent Office under penalty of perjury that:

> I believe I am the original, first and sole inventor . . . of the subject matter which is claimed and for which a patent is sought . . . . I acknowledged the

duty to disclose information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56.

17.

Rodney Barbour's declaration was false. Contrary to Rodney Barbour's declaration to the Patent Office, Rodney Barbour was not and is not the original, first and sole inventor of the Turkey Frying Apparatus claimed in the `505 Application. Rather, Rodney Barbour copied the idea of the Turkey Frying Apparatus from the Morrone Turkey Frying Apparatus.

18.

In addition, neither Rodney Barbour, Barbour nor their counsel disclosed to the Patent Office the existence of the Morrone Turkey Frying Apparatus. The Morrone Turkey Frying Apparatus is prior art and is pertinent and material to the subject matter of the `505 Application.

19.

The Patent Office, relying on the representations made in the the `505 Application, issued US Patent Number 5,758,569 ( the "`569 Patent") to Rodney Barbour on June 2, 1998. A true, accurate and complete copy of the `569 Patent is attached herein as Exhibit "C."

### U.S. PATENT NUMBER 5,896,810

20.

On March 20, 1998, Rodney Barbour, as alleged "Inventor" and Barbour as alleged "Assignee" filed U.S. Patent Application Serial Number 09/047,184 (the "`184 Application") with the Patent Office. The `184 Application was a continuation-in-part of the `505 Application and also falsely claimed the Morrone Turkey Frying Apparatus as Rodney Barbour's invention. The file for the `184 Application has been misplaced at the Patent Office.

21.

In the `184 Application, Barbour was required to declare to the Patent Office under penalty of perjury that:

> I believe I am the original, first and sole inventor . . . of the subject matter which is claimed and for which a patent is sought . . . . I acknowledged the duty to disclose information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, § 1.56.

22.

Rodney Barbour's declaration was false. Contrary to Rodney Barbour's declaration to the Patent Office, Rodney Barbour was not and is not the original, first and sole inventor of the

Turkey Frying Apparatus claimed in the `184 Application. Rather, Rodney Barbour copied the Turkey Frying Apparatus from the Morrone Turkey Frying Apparatus.

23.

Again, neither Rodney Barbour, Barbour nor their counsel disclosed to the Patent Office the existence of the Morrone Turkey Frying Apparatus. The Morrone Turkey Frying Apparatus is prior art and is pertinent and material to the subject matter of the `184 Application.

24.

The Patent Office, relying on the representations made in the the `184 Application, issued the `810 Patent to Rodney Barbour on April 27, 1999. A true, accurate and complete copy of the `810 Patent is attached herein as Exhibit "D."

**THE LICENSE AGREEMENT**

25.

In a letter dated March 9, 1998 (the "March 9th Letter), Barbour, through its counsel, announced to Morrone that "we have been successful in obtaining allowance of several claims in our patent application entitled 'Poultry Frying Apparatus.'" The March 9th Letter offered Morrone a license to make, use, and sell the Turkey Frying Apparatus "for a royalty of $1.75 per unit" and advised Morrone that "Barbour plans to vigorously

enforce its patents" and "if you continue to commercialize products covered by any of Barbour's patents without taking a license thereon, you will hear from us immediately." A true, accurate and complete copy of the March 9th Letter is attached herein as Exhibit "E."

26.

In addition to the March 9th Letter, Barbour made other threatening communications to Morrone. Barbour falsely represented to Morrone that the Patents were valid and enforceable and had been acquired by complying fully with the applicable rules and regulations regarding the acquisition of patents.

27.

Based on Barbour's representation that the Patents were valid and enforceable and had been obtained in full compliance with the applicable laws and regulations regarding the acquisition of patents, Morrone experienced a reasonable apprehension that it would face a patent infringement suit if it continued to manufacture, sell, and/or offer to sell its Turkey Frying Apparatus without paying royalties to Barbour.

28.

Based on Barbour's representations, Morrone signed a license agreement with Barbour (the "License Agreement") on July

10, 1998. A true, accurate and complete copy of the License Agreement is attached herein as Exhibit "F".

29.

The terms of the License Agreement required Morrone to pay to Barbour a royalty on every Turkey Frying Apparatus sold by Morrone.

30.

At all pertinent times, Morrone had, and continues to have, the present intention and ability to make, use, sell, and offer Turkey Frying Apparatuses.

31.

Since July 10, 1998, Morrone has paid and continues to pay Barbour substantial royalties pursuant to the License Agreement. As of January 21, 2002, Morrone has paid over $211,000 in royalties pursuant to the License Agreement.

32.

At all pertinent times, both Rodney Barbour and Barbour knew that, contrary to Rodney Barbour's declarations to the Patent Office, Rodney Barbour was not the original first, and sole inventor of the Turkey Frying Apparatus claimed in the `505 Application and in the `184 Application. However, neither Rodney Barbour, Barbour nor their counsel disclosed to the

Patent Office the existence of the Morrone Turkey Frying Apparatus.

33.

At all pertinent times, both Rodney Barbour and Barbour knew that because Rodney Barbour was not the original first, and sole inventor of the Turkey Frying Apparatus claimed in the `505 Application and in the `184 Application and because neither Rodney Barbour, Barbour nor their counsel disclosed to the Patent Office the existence of the Morrone Turkey Frying Apparatus, the Patents would be and are invalid and unenforceable.

34.

In inducing Morrone to sign the License Agreement, Barbour and Rodney Barbour knowingly and willfully misrepresented to Morrone that Rodney Barbour invented the Turkey Frying Apparatus, the Patents would be valid and are and that Barbour had the right to enforce the Patents.

35.

Barbour and Rodney Barbour knew that these representations were false when they were made. Morrone relied to its detriment on these false representations.

36.

Barbour dominates the market for turkey frying apparatuses in the United States.

37.

By threatening to file a patent infringement lawsuit against Morrone and upon also threatening to file patent lawsuits and/or filing patent lawsuits against numerous other distributors of poultry frying apparatuses, all while knowing that the Patents would be and are invalid and unenforceable and all while knowingly and willfully misrepresenting that the Patents would be valid and that Barbour had the right to enforce the Patents, Barbour has engaged in predatory and anticompetitive conduct with the specific intent to monopolize the market for poultry frying apparatuses.

## COUNT I
### Declaratory Relief and Damages

38.

Morrone incorporates the allegations contained in Paragraphs 1 through 37 of this Complaint as though set forth fully herein.

39.

As a result of Barbour's threatening communications to Morrone and Barbour's threats of patent infringement lawsuits

and filing of patent infringement lawsuits against numerous other distributors of poultry frying apparatuses, an actual controversy exists between Morrone and Barbour regarding the validity and enforceability of the `569 Patent and the `810 Patent.

40.

The claims of the `569 Patent and the `810 Patent are invalid pursuant to 35 U.S.C. § 282 due to failure to comply with one or more sections of Title 35 U.S.C. including 35 U.S.C §§ 102, 103, and/or 112.

41.

The `569 and `810 Patents are unenforceable as a result of Rodney Barbour's knowing and willful failure to satisfy his duty of disclosure to the Patent Office and his knowing and willful inequitable conduct and actual fraud on the Patent Office during the procurement of the `569 Patent and the `810 Patent.

42.

By reason of the foregoing, Morrone has been and will continue to be injured and, pursuant to 35 U.S.C. § 282 and 28 U.S.C. § 2201, is entitled to judgment in its favor and against Rodney Barbour and Barbour declaring the `569 Patent and the `810 Patent invalid and unenforceable.

43.

This is an exceptional case allowing for the awarding of reasonable attorney fees, costs, and expenses to Morrone pursuant to 35 U.S.C. § 285.

## COUNT II
### Monopolization or Attempt to Monopolize

44.

Morrone incorporates the allegations contained in Paragraphs 1 through 43 of this Complaint as though set forth fully herein.

45.

As a result of Barbour's domination of the market for poultry frying apparatuses in the United States and its predatory and anticompetitive conduct with the specific intent to monopolize that market, there exists dangerous probability of monopolization of that market by Barbour in violation 15 U.S.C. § 2.

46.

Also as a result of Barbour's domination of the market for poultry frying apparatuses in the United States and predatory and anticompetitive conduct with the specific intent to monopolize that market, Morrone has suffered damages including but not limited to lost profits, loss of substantial royalties

paid to Barbour, attorney's fees, court costs, litigation expenses, interest, and other damages which will be proven at trial.

47.

By reason of the foregoing, Morrone has been injured and, pursuant to 15 U.S.C. § 15 and 28 U.S.C. § 2202 is entitled to judgment in its favor and against Rodney Barbour and Barbour awarding damages sustained by Morrone, plus threefold the damages sustained by Morrone, and the cost of suit, including a reasonable attorney's fee, together with simple interest on actual damages.

**COUNT III**
Fraud

48.

Morrone incorporates the allegations contained in Paragraphs 1 through 47 of this Complaint as though set forth fully herein.

49.

The Defendants perpetrated a scheme to defraud Morrone. The Defendants with knowledge of the truth, misrepresented and failed to inform Morrone that Rodney Barbour was not the original, first and sole inventor of the Turkey Frying Apparatus and that Rodney Barbour fraudulently procured the Patents.

1450136v4                                16

50.

The Defendants' representations were made with the express purpose of inducing Morrone to enter into the License Agreement, inducing the Patent Office to issue the Patents and defrauding both Morrone and the Patent Office.

51.

The Defendants' representations to Morrone and to the Patent Office were false, were not privileged, were made with the intention of injuring Morrone and are actionable under both Georgia and federal law.

52.

Both Morrone and the Patent Office justifiably relied on the Defendants' representations.

53.

Morrone has been harmed as a direct and proximate result of the Defendants' fraudulent acts.

54.

Morrone is being damaged by the Defendants' acts, and is entitled to injunctive relief and monetary damages, including punitive damages and Morrone's reasonable attorneys' fees, against Barbour.

## COUNT IV
Recission

55.

Morrone incorporates the allegations contained in Paragraphs 1 through 54 of the Complaint as though set forth fully herein.

56.

As shown above, the July 10, 1998 License Agreement between Morrone and Barbour was procured by Defendants' fraud.

57.

As a result, the License Agreement should be rescinded and Barbour should be ordered to return all sums paid to it by Morrone, pursuant to the License Agreement, with interest.

58.

In addition, during the pendency of this lawsuit, this Court should enjoin Barbour from collecting any royalties from Morrone pursuant to the License Agreement and should, instead, order Morrone to deposit all sums arguably due to Barbour under the License Agreement into the registry of the Court.

**WHEREFORE**, Plaintiff Morrone prays for the following relief:

    a.    that the `569 Patent be adjudged and decreed invalid, void and unenforceable;

b.   that the `810 Patent be adjudged and decreed invalid, void and unenforceable;

c.   that it be adjudged and decreed that Morrone has not infringed upon any valid claims in the `569 Patent or in the `810 Patent;

d.   that this Court order that the License Agreement be rescinded and that all sums paid to Barbour by Morrone pursuant to the License Agreement be returned to Morrone, with interest.

e.   that, during the pendency of this case, Morrone be required to place all sums allegedly due to Barbour under the License Agreement into the registry of this Court.

f.   that Morrone be awarded actual damages in an amount to be proven at trial;

g.   that Morrone be awarded threefold the damages sustained by Morrone pursuant to 15 U.S.C. § 15;

h.   that Morrone be awarded reasonable attorneys' fees, together with interest on actual damages pursuant to 15 U.S.C. § 15, 28 U.S.C. § 2202, U.S.C. § 285, O.C.G.A. § 13-6-11, any other applicable statute;

i.   that Morrone be awarded punitive damages in an amount to be determined in the enlightened conscience of an impartial jury;

j.  that Morrone have such other, further or different relief and damages as justice and equity may require.

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

Stephen M. Dorvee
Georgia Bar No. 226989
Shymeka L. Hunter
Georgia Bar No. 004695

2800 One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia  30309
Tel.:  (404) 873-8500
Fax:   (404) 873-8501

1450136v4

20